FILED

2006 May-25  PM 03:33
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| JONEFORL WALLACE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CV-05-H-0650-S** |
| | ) | |
| FLYING J, INC., et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OF DECISION

The court has before it the March 30, 2006 motion (doc. 9) of defendant

Flying J, Inc. for summary judgment.  Pursuant to the court's March 31, 2006

order (doc. 10), the motion was deemed submitted, without oral argument, on May

5, 2006.

## I. Procedural History

Plaintiff Joneforl Wallace commenced this action by filing a complaint in

Jefferson County Circuit Court on March 7, 2005, alleging that his former

employer, defendant Flying J, Inc., committed the torts of slander, outrage, and

negligent hiring and/or termination against him.  (See Compl.)  Defendant

removed the action (doc. 1) to this court on March 28, 2006.  Defendant's March

30, 2006 motion for summary judgment asserts that (1) all three of plaintiff's claims are barred by the statute of limitations, and (2) even if plaintiff's claims were not barred by the statute, there are no material issues of fact, and defendant is entitled to judgment as a matter of law.  (<u>See generally</u> Def.'s Br. Supp. Summ. J.)

On March 30, 2006, defendant filed a memorandum and evidence[1] (doc. 9) in support of its motion.  Plaintiff filed a brief and evidence[2] (doc. 11) in opposition to the motion on April 28, 2006.  Defendant filed a reply brief (doc. 12) to plaintiff's opposition on May 5, 2006.  The court has considered all of the briefs and the evidence.

## II. Standards for Evaluating a Summary Judgment Motions and Motions to Dismiss

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Chapman v. AI Transport</u>, 229

---

[1] Defendant submitted the following evidence:  excerpts from the deposition of plaintiff Joneforl Wallace and excerpts from the deposition of Johnny DeGraffenreid, a general manager at the McCalla Flying J where plaintiff previously worked.

[2] Plaintiff submitted the following evidence:  the affidavit of Joneforl Wallace, the affidavit of plaintiff's grandmother, Asilee Wallace, excerpts from the deposition of Johnny DeGraffenreid, and excerpts from the deposition of Joneforl Wallace.

F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Chapman, 229 F.3d at 1023.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249-50.  The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2

F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991) (en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving party cannot meet its burden at trial but does

4

not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts.  <u>Lewis v. Casey</u>, 518 U.S. 343, 358 (1996) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts[3]

Plaintiff is a twenty-six-year-old resident of McCalla, Alabama.  (Wallace Dep. at 9.)  He is currently employed as a truck driver for 84 Lumber in Bessemer, Alabama.  (<u>Id.</u> at 15.)  Flying J, Inc. owns and operates a number of truck stops that provide food, fuel, and convenience items for truck drivers and other motorists.  (DeGraffenreid Dep. at 12-13.)  In addition to the fuel pumps, each

---

[3] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party.  <u>See</u> <u>Fitzpatrick</u>, 2 F.3d at 1115.

Flying J store consists of a "C-Store," or convenience store, and a "Cookery," or restaurant.  (Id. at 12-13, 19-21.)  The C-Store and Cookery are managed independently of one another.  (Id. at 19-21.)

In 1996 or 1997, while plaintiff was still attending McAdory High School, he was hired to wash dishes at the McCalla Flying J.  (Wallace Dep. at 22-23.) Plaintiff was hired as an hourly employee by Johnny DeGraffenreid, the general manager of the Cookery at that time.  (Id. at 22.)  During his tenure at the Cookery, plaintiff was implicated in at least four thefts:  electronics from the C-Store, frozen steaks from the Cookery, cash from the Cookery, and prescription medication belonging to a Flying J manager.  (DeGraffenreid Dep. at 11-18, 28-33.)  Plaintiff denied involvement in any of the thefts, and Flying J took no disciplinary action against him in connection with them.  (Id. at 28-29.)

One day in 2001, plaintiff filled his car with gas when he arrived at work. (Wallace Dep. at 27-28.)  After filling his car up, he went into the Cookery to borrow ten dollars from his manager, Johnny DeGraffenreid, to pay for the gas. (Id. at 27.)  Before plaintiff could pay for the gas with the money he borrowed, Mike Gay, the manager of the C-Store portion of the Flying J, came to the Cookery and accused plaintiff of stealing the gas.  (Id. at 27-28.)  Gay made this accusation in front of several other Cookery employees.  (Id. at 28-29.)  Plaintiff

6

denied stealing the gas and then paid the ten dollars at the C-Store.  (Id. at 28.)

Plaintiff was not terminated or officially reprimanded as a result of this incident.

(See id. at 28-29.)  He proceeded to work at the Cookery that day and continued to

work there for approximately one year after he was accused of stealing gasoline.

(Id. at 29-30.)

Plaintiff worked for Flying J until sometime in 2002 when he began

working for a Birmingham factory that produced nuts and bolts.  (Id. at 31.)  He

left the factory job after approximately two months because the factory moved its

operation to Cullman, Alabama, and plaintiff did not want to move there.  (Id. at

31-32.)  Plaintiff then returned to the McCalla Flying J to see if they would re-hire

him to work in the Cookery.  (Id. at 33-34.)  Johnny DeGraffenreid rehired

plaintiff to work in the Cookery, and he worked as cook there until he was

terminated.  (Id. at 35.)  Plaintiff was terminated after approximately five months

when A.J. Darwezeh, the new C-Store manager, informed plaintiff that the Flying

J computer database showed he was designated as a "no-rehire."  (Id. at 35-36.)

Because of this status, plaintiff was given his last paycheck and terminated

immediately.  (Id. at 36.)

Plaintiff readily admits that he never signed any sort of employment

contract or agreement with Flying J at any time during his tenure there.  (Id. at 31,

7

36-37.)  He also admits that he has not worked at Flying J since October 15, 2002,

when he began working at the Bright Star restaurant in Bessemer.  (Id. at 40.)

This action was commenced on March 7, 2005.  (See Compl.)

### IV. Applicable Substantive Law and Analysis

Plaintiff's complaint alleges claims for slander, outrage, and negligence.

(See Compl.)  Defendant's motion for summary judgment, as amplified in its brief

in support thereof, asserts that (1) plaintiff's claims are barred by the applicable

statutes of limitations, and (2) even if plaintiff's claims were not time-barred, there

are no genuine issues of material fact and defendant is entitled to judgment as a

matter of law.  (See generally Def.'s Br. Supp. Summ. J.)

All of plaintiff's claims have two-year statutes of limitations.  Ala. Code §

6-2-38(k) ("All actions of libel or slander must be brought within two years.");

Casassa v. Liberty Life Ins. Co., 949 F. Supp. 825, 832 (M.D. Ala. 1996) (noting

that negligence actions are subject to a two-year statute of limitations and citing

Ala. Code § 6-2-38); Archie v. Enterprise Hospital and Nursing Home, 508 So. 2d

693, 695 (Ala. 1987) ("[W]e hold that the tort of outrage . . . is governed by the

two-year statute of limitations found in § 6-2-38(l) . . . .").[4]  All three of plaintiff's

---

[4] Ala. Code §§ 6-2-38 (l) and (n) cover tortious conduct not specifically listed in other
sections.  They provide as follows:

(l) All actions for any injury to the person or rights of another not arising from

8

claims are therefore time-barred.

A claim for slander accrues, and the statute of limitations begins to run, on the date of publication, which is the date on which the injury to plaintiff's reputation occurs.  Poff v. Hayes, 763 So. 2d 234, 242 (Ala. 2000).  Each distinct publication, even if it relates to the same set of facts, gives rise to a separate cause of action.  Id.  According to plaintiff's deposition testimony, the alleged slanderous statement was published sometime during 2001 and not in December 2003, as plaintiff alleged in his complaint:

> Q. Okay.  So just to be clear, from October 15th, 2002, to October 9th, 2005, you worked for Bright Star?
>
> A. Yeah.
> ***
> Q. Okay.  So in 2001 Michael Gay accused you of stealing gasoline?
>
> A. Yes, sir.
> ***
> Q. Okay.  So beginning when you started with the Bright Star on October 15, 2002, after that you never worked at Flying J, you were with Bright Star the whole time?

---

contract and not specifically enumerated in this section must be brought within two years.

(n) All actions commenced to recover damages for injury to the person or property of another wherein a principal or master is sought to be held liable for the act or conduct of his agent, servant, or employee under the doctrine of respondeat superior must be brought within two years.

Ala. Code §§ 6-2-38 (l), (n).

A. Yes.
(Wallace Dep. at 21, 26, 40.)

Plaintiff's claim that arose in 2001 when Gay accused him of stealing gasoline is

clearly barred by the two-year statute of limitations.

In addition, plaintiff is incorrect that his firing constituted another

"publication."  There is no evidence that anyone other than plaintiff was present

when he was terminated, and it is well settled that there can be no publication if

the alleged defamatory statement was made only to the plaintiff.  Reece v. Finch,

562 So. 2d 195, 198 (Ala. 1990).  Even if another Flying J employee was present

when plaintiff was terminated, there would still be no publication because

"communications among employees in the course of transacting the company's

business and in the proper scope of the employees' duties do not constitute a

publication."  Atkins Ford Sales, Inc. v. Royster, 560 So. 2d 197, 201 (Ala. 1990)

(citing Nelson v. Lapeyrouse Grain Corp., 534 So. 2d 1085 (Ala. 1988)).

Darwezeh was clearly acting within the scope of his employment and carrying out

his managerial duty when he fired plaintiff because of his "no rehire" status.

Therefore, no publication occurred.  Even if his firing had constituted another

publication, however, that cause of action would still be time-barred because he

was apparently fired from Flying J sometime in 2001 or 2002.[5]

The statute begins to run on a claim for negligence "at the time of the first legal injury, regardless of whether the full amount of damages is apparent." Casassa, 949 F. Supp. at 832.  It is unclear in the instant case whether plaintiff has even stated a claim for negligence.  Apparently, plaintiff claims that Flying J was negligent in rehiring plaintiff.  However, plaintiff has not shown any sort of duty not to rehire plaintiff or that plaintiff suffered any harm as a result of his being rehired and subsequently fired.  Whether one assumes that the "injury" underlying this claim occurred when plaintiff was rehired by DeGraffenreid in approximately

---

[5] Plaintiff testified as follows:

Q. And Johnny [DeGraffenreid, the Cookery manager], did he rehire you?

A. Yeah, he rehired me.

Q. Okay.  And that would have been in 2002?

A. Man, I'm getting these dates mixed up.  Man, I can't remember that stuff, man. It's been about 2002, 2001.
***
Q. So when you came back to work –

A. – I was on the cook line.
***
Q. Okay. So you worked on the cook line for four or five months, and then you got fired?

A. Yeah.  A.J. [Darwezeh, the C-Store manager at the time] told me they got to get rid of me because they said I was in the computer as a no-rehire.

(Wallace Dep. at 34-35.)

2001 or 2002 or that it occurred when he was fired by Darwezeh in 2002, it is barred by the statute of limitations.  Assuming the injury occurred when he was fired and that he was fired on December 31, 2002, plaintiff would still have had to file suit by December 31, 2004.  Instead, he did not file until March 7, 2005, and his claim is therefore time-barred.

The two-year statute of limitations for outrage begins to run on the last day that the plaintiff was injured by the defendant, not at the time plaintiff becomes aware of the injury.  McMillian v. Johnson, 878 F. Supp. 1473, 1542 (M.D. Ala. 1995), rev'd on other grounds, 88 F.3d 1554 (11th Cir. 1996).  Once again, regardless of whether the injury is deemed to have occurred in 2001 or in 2002, as discussed above, plaintiff's claim is time-barred.

The evidence plaintiff offered fails to support his contention that his claims are not time-barred.  Plaintiff's affidavit, which contradicts his deposition testimony without explaining the contradiction, is inadmissible to the extent that it conflicts with his deposition testimony.  It is well established in the Eleventh Circuit that such affidavits are a sham:  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  Van

12

T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984);

see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n.7 (11th Cir.

2003).  The affidavit of plaintiff's grandmother, Asilee Wallace, is also

inadmissible because it contains hearsay.  Hearsay, of course, "cannot be

considered on a motion for summary judgment."  Club Car, Inc. v. Club Car

(Quebec) Import, Inc., 362 F.3d 775, 783 (11th Cir. 2004).  Unless Ms. Wallace

has personal knowledge (i.e. she was present) for any conversations between

plaintiff and Flying J management, she cannot testify as to the date, time, place, or

content of those conversations.  She did not state in her affidavit that she had

personal knowledge of such facts.  Therefore, the portion of her affidavit

pertaining to those facts is inadmissible.

 In summary, the court finds that no material issues of fact remain and that

defendant Flying J is entitled to judgment as a matter of law as to all claims

asserted by plaintiff.  A separate order will be entered.

 **DONE** this the ___25th___ day of May, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE